## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

Timothy Baiza,
    Plaintiff

**5-24CV-115-H**

§ CIVIL ACTION NO._____
§
§
**v.**                    §

**Management Training Corporation (MTC)**
**Tiffany Graves, TCCC Health Serv. Director**
**Nkule, Myra, TCCC Nurse Practioner.**
**Marsha McLane, Executive Director TCCO[1],**
**Farrah Shelton, Contract Compliance Mgr.**
**Michael Searcy, Contract Compliance Mgr.**
    **Defendants.**

## COMPLAINT DEMAND FOR JURY TRIAL

### I. JURISDICTION AND VENUE

1.    This is a civil action authorized by **42 U.S.C. Section 1983** to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under **28 U.S.C. Section 1331 and 1343(a)(3).**
    Plaintiff seeks Declaratory relief pursuant to **28 U.S.C. Section 2201 and 2202.** Plaintiff's Claims for injunctive relief are authorized by **28 U.S.C. Section 2283 and 2284** and **rule 65 of the Federal Rules of Civil Procedure.**

2.    The **United States District Court for the Northern District of Texas,** is an appropriate venue under **28 U.S.C. Section 1391(b) (1)(2)** because it is where multiple Defendants reside or are employed, and where the events giving rise to this claim occurred

### II. PLAINTIFF

3.    Plaintiff, **Timothy Baiza (herein: Baiza)** is and was at all times mentioned herein a civilly committed patient in total confinement at the Bill Clayton Detention Center, occupied by the (TCCO), as the Texas Civil Commitment Center **(herein: TCCC), at 2600 South. Sunset Ave. Littlefield TX, 79339.**

---

1 Texas Civil Commitment Office. See Sec. 841.002. (4) agency created pursuant to Tex, Health & Safety Code Ann. § Sec. 841. commonly referred to as Sexually Violent Predator Act. **(herein: SVPA)**

### III. DEFENDANTS

**4.** Defendant **Management Training Corporation (Suit commenced via Principle Agent -TCCC Facility Administrator- Wayne Schmoker) (herein: MTC)** is a for profit private prison company which began providing services for Plaintiff, and all Patients at the TCCC on May 1st 2019, to the present. MTC is legally responsible for the implementation of promulgated policies and to well-known practices so persistent and widespread as to constitute a de facto policy effecting the conditions of confinement, (including Medical Care) subjected upon Plaintiff and all patients of the TCCC. MTC is lawfully responsible for the function, policy and operation, of the TCCC Medical Department and responsible for overall medical care pro in its entire scope, provided to Plaintiff and all patients at the TCCC. **MTC is being sued as a corporation, in their individual and official capacities and at all times mentioned herein acted under color of state law. (MTC may be served, via principle Agent Wayne Schmoker** with Proper notice of this suit by proper service of Summons and Complaint **at his office at 2600 South Sunset Ave., Littlefield, TX 79339.)**

**5.** Defendant **Tiffany Graves (herein: Graves)** Is the TCCC Health Service Administrator. Graves is legally responsible for the implementation of promulgated policies and to well-known practices so persistent and widespread as to constitute a de facto policy that effect the conditions of confinement, (including Medical Care) subjected upon Plaintiff and all patients of the TCCC. Graves is lawfully responsible for the function, policy and operation, of the TCCC Medical Department and responsible for overall medical care, in its entire scope, provided Plaintiff and all patients at the TCCC. Graves is legally responsible for the function, policy and operation, of the TCCC Medical Department and for the medical care provided Plaintiff and all patients at the TCCC, **Graves is being sued in her individual and official capacities and at all times mentioned herein acted under color of state law. (Tiffany Graves may be served,** with Proper notice of this suit by proper service of Summons and Complaint **at her office at 2600 South Sunset Ave., Littlefield, TX 79339.)**

**6.** Defendant **Nkule, Myra (herein: Myra)** Is a TCCC Nurse Practioner, employed with MTC, Myra is responsible for the policies and practices of the TCCC Medical Department, and Plaintiff's Medical care. Myra is lawfully responsible for the function, policy and operation, of the TCCC Medical Department and responsible for overall medical care, in its entire scope, provided Plaintiff and all patients at the TCCC. **Myra is being sued in her individual and official capacities and at all times mentioned herein acted under color of state law. (Nkule may be served,** with Proper notice of this suit by proper service of Summons and Complaint **at her office at 2600 South Sunset Ave., Littlefield, TX 79339.)**

7.     Defendant **Marsha McLane (herein: McLane) is the Executive Director of TCCO** McLane is legally responsible for the overall policy, administration and function of the TCCO, and business, company, or corporations contracted with TCCO to provide care and services to Plaintiff and other patients at the TCCC who are civilly committed. McLane has final policy making authority over the TCCC, as TCCO promulgates or approves all policies to be implemented at the TCCC, which policies either by official implementation, or existing due to well-known practices so persistent and widespread as to constitute a de facto policy or custom, which policy or custom effect the conditions of confinement, and atmosphere subjected upon Plaintiff. **MARSHA MCLANE, IS NOT BEING SUED FOR MONETARY DAMAGES IN HER OFFICIAL CAPACITY FOR MONETARY DAMAGES.** McLane, is being sued in her official capacity for injunctive and declaratory relief, and is being sued in her individual capacity for damages. At all times mentioned here **McLane,** acted under color of state law. **(Marsha McLane,** may be served with proper notice of this suit by proper service of Summons and Complaint at her office located at: **4616 West Howard Lane, Building 2, Suite 350, Austin TX, 78728.**

8.     Defendant **Farrah Shelton (herein: Shelton),** is a TCCO contract compliance manager, legally responsible for the overall policy, administration, and function of the TCCO, and business, company, or corporations contracted with TCCO to provide medical care services to Plaintiff and other patients at the TCCC who are committed pursuant to the SVPA. Shelton is legally responsible for the implementation of promulgated policies or to well-known practices so persistent and widespread as to constitute a de facto policy effecting the conditions of confinement, (including Medical Care) subjected upon Plaintiffs and all patients of the TCCC. **SHELTON IS NOT BEING SUED IN HER OFFICIAL CAPACITY FOR MONETARY DAMAGES.** She is being sued in her individual capacity for damages, and Official Capacity for injunctive relief. At all times mentioned herein Shelton acted under color of state law **(Shelton may be Served with Proper notice of this suit** by proper service of Summons and Complaint at TCCO office located at: **4616 West Howard Lane, building 2, Suite 350, Austin TX, 78728.)**

9.     Defendant **Michael Searcy (herein: Searcy),** is a TCCO contract compliance manager, legally responsible for the overall policy, administration, and function of the TCCO, and business, company, or corporations contracted with TCCO to provide medical care services to Plaintiff and other patients at the TCCC who are committed pursuant to the SVPA. Searcy is legally responsible for the implementation of promulgated policies or to well-known practices so persistent and widespread as to constitute a de facto policy effecting the conditions of confinement, (including Medical Care) subjected upon Plaintiffs and all patients of the TCCC. **SEARCY IS NOT BEING SUED IN HIS OFFICIAL CAPACITY FOR MONETARY DAMAGES.** He is being sued in his individual capacity for damages, and Official Capacity for injunctive relief. At all times mentioned herein Searcy acted under color of state law (**Searcy may be Served**

with **Proper notice of this suit** by proper service of Summons and Complaint at TCCO office located at: **4616 West Howard Lane, building 2, Suite 350, Austin TX, 78728.**)

## IV. FACTS.

**10.**     Plaintiff Timothy Baiza hereby incorporates above Sections **II. PLAINTIFF, & III. DEFENDANTS** and all information, references to, or of Plaintiff and each Defendant herein as facts and a part of the facts herein pleaded in the complaint.

**11.**     Timothy Baiza entered a plea bargain with the state and received multiple years in prison in exchange for pleas of guilt for at least 2 sex offences. Shortly before Plaintiff completed his prison term the state filed petition to civilly commit him under Ch. 841. Tex Health & Safety Code, aka the Sexually Violent Predator Act (SVPA). Pursuant to a jury trial It was determined that Plaintiff is afflicted with a mental illness/abnormality called a "behavior abnormality," and issued an order civilly committing him to the custody of TCCO, and MTC for care and inpatient treatment at the TCCC.

**12.**     The TCCC is not prison but is a "residential treatment facility" operated within the confines of the Bill Clayton Detention Center, a Maximum Security Prison, in Littlefield, TX. Plaintiff is a patient at the TCCC and arrived at the facility on May 5, 2020. Since that time he has been compliant with the policies of the facility and TCCO, and has progressed in treatment.

## 1.     THIS COMPLAINT CONCERNS THE DEFENDANTS DENYING PLAINTIFF ADEQUATE MEDICAL CARE RESULTING IN PLAINTIFF'S PAIN, SUFFERING, AND LIFELONG INJURY OF A TORN BICEP AND DAMAGED SHOULDER.

**13.**     On or about December 12, 2022, Plaintiff was on the TCCC recreation yard playing handball during the 7:00pm-9:00pm recreation period, when he fell on the concrete with full weight of his body landing on the palm of his outstretched hand, arm and shoulder. He felt a painful snap and extreme pain on his upper right arm and shoulder. He immediately sought help from the TCCC staff and medical attention. After returning to his living area on E-building, He told Security Officer (SO) that he had injured his shoulder. After the SO observed the discoloration and swelling of his shoulder and upper right arm the SO told Plaintiff to go to the medical department (medical). Though he was obviously injured and in pain, he was told by the A-building security staff that there was no medical personal present this late in the evening so he could not be seen right away but he had to place a sick call request in the medical box due to MTC/TCCC policy. This policy caused a delay in plaintiff receiving medical care.

**14.**     Plaintiff returned to his living area and submitted a sick call. *see* (**Exhibit pg. 1.** Sick call request dated 12-12-2022, *stating* "I injured my shoulder playing handball now I having [sic] a bad pain in my right shoulder that is getting worse.) Due to defendants MTC, Graves, McLane, Marsh, Shelton, and Searcy's widespread, well-known and persistent practice of inadequately staffing, or allowing the inadequate medical personal

on the TCCC, Plaintiff was delayed any medical care for 6-days, not being seen by any medical staff until 12-18-2023. Baiza endured pain, suffering and limited movement of his shoulder and upper right arm while he was waiting for medical care. On 12-18-22., Plaintiff was seen by a Nurse, who provided Tylenol & ibuprofen for pain and referred him to the provider. (**Ex. 1.)**

**15.**　　Due to inadequate staffing of employees in TCCC medical dept., medical staff are overworked, underfunded, underpaid, and unable to meet the demands of a continually increasing TCCC patient population, of which the average age is 55 years old, and patients often wait weeks for medical attention. For 3-weeks Plaintiff continued to endure pain and suffering while waiting to see the medical provider, and 1-3-23 he submitted another sick call (**Ex. 2.** *Stating* "It's going on 3wk's and I still haven't seen the provider for my right shoulder I'm in serious pain, what do I have to do to see and get X-rays for my shoulder […].")

**16.**　　Plaintiff was upset and continued to endure emotional distress, due to the denial of adequate medical care for his injury. On 1-4-23 plaintiff was seen by Defendant Nkule, *see* (**Ex. Pg. 11.** Provider Progress/ notes. "C/O right shoulder pain x5weeks. He injured his right shoulder while playing basketball (he swung too hard and head a "popped" noise from affected shoulder") Defendant Nkule acknowledged plaintiff's injury was over 5 weeks old, yet simply provided ibuprofen for pain, Plaintiff asserts that it he told Nkule he had a bad injury to his bicep and needed to go to the hospital but she ignored his request and ordered an X-ray, and sent him away. Nkule departed from accepted professional, judgment, practice and standards of the medical field for sending Plaintiff back to his housing area instead of sending him to the hospital.

**17.**　　A week after seeing the provider Plaintiff's shoulder was X-rayed and while waiting for the results he slipped in the laundry/shower area on or about 1-15-23, and aggravated his injuries when he attempted to catch himself and felt a loud snap and extreme throbbing pain. He submitted another sick call request. (**Ex. Pg. 3.** sick call dated, 1-15-23, explaining how he slipped and caught himself, *stating* "now I can't lift my arm very much and it's continually hurts. Please Help!" i**d.**) Though Plaintiff was clearly injured and suffering pain and emotional distress, he was denied adequate medical care, his requests for help were ignored and medical care was extremely delayed due Defendants Graves, McLane, Marsh, Shelton, and Searcy's inadequate provision of an adequate medical department at the TCCC. All TCCC patients experience delay and inadequate medical attention every day, and is well-known and persistent on the TCCC.

**18.**　　Plaintiff and all TCCC patients are civilly committed persons in Texas, not prison inmates or pretrial detainees. However, TCCC patients are the only civilly committed persons in Texas who are denied adequate medical care. People who have murdered their children, killed their parents, stabbed cab drivers assaulted women, are civilly committed to state hospitals and provided the best medical care in the medical field by statute. *See*

*attached* (**Exhibit B.** MULTIPLE CASES OF TEXAS CITIZENS CIVILLY
COMMITTED DUE TO A MENTAL ILLNESS THAT MAKES THEM LIKELY TO
CAUSE SERIOUS HARM TO OTHERS. **(**Multiple cases of dangerous persons civilly
committed due to horrendous acts))

**19.**     On 1-23-23, in response to plaintiff's 1-15-23 sick call, he was seen by Dr. Robert
Broselow, (**Ex. Pg., 31.** provider notes dated: 1-23-23, *Broselow stated* "tests for rotator
cuff injury are positive." Broselow ordered 600mgs Ibuprofen & 650ng Tylenol) Plaintiff
was still not sent to the hospital, but provided pain medication. Plaintiff continued to
suffer pain, and limited movement in his right arm, while he waited for medical care.
Plaintiff was hoping his injury would heal but as it did not and he began to suffer
anxiousness and fear of irreparable damage to his right arm. He remained respectful and
tried to be patient with medical, however the pain became unbearable and on 2-14-23,
Plaintiff submitted another sick call (**Ex. Pg. 4** sick call dated 2-14-23, *stating* "Dr.
Broselow: The 600 I-buprofe n and 650 Tylenol [sic] are not helping I am in severe pain
in my right shoulder. Please Help.")

**20.**     Plaintiff was seen 6 days later on 2-20-23 by Dr. Broselow, who noted that he had
injuries consistent with a torn right rotator cuff 2 months earlier but only ordered
Ibuprofen and Tylenol. (**Ex. Pg. 33.**) Due to Plaintiff's injury Broselow ordered an MRI
for Plaintiff's right shoulder. (**Ex. Pg. 33-34.**) Plaintiff continued to experience pain and
inability to perform daily activities due to his injuries, and a delay in medical care. On 3-
12-23, he submitted a sick call requesting information concerning the status of the MRI,
and notifying medical that the pain medication provided (Cymbalta) is not helping with
the pain. (**Ex. Pg. 5).** A month later on 4-15-23, Plaintiff met with a Physical Therapist,
Chris Trevino, who noted Baiza had a torn by bicep, and recommended he see the
orthopedic surgeon for his torn bicep, and shoulder (**Ex. Pg. 36.**)

**21.**     Plaintiff waited another week, and submitted a sick call on 4-27-23 while he
suffered pain. (**Ex. Pg. 6.**) On 4-28-23, Plaintiff was seen by Dr. Broselow who
acknowledged plaintiff has a torn rotator cuff and torn bicep and referred him to an
orthopedic surgeon. Due to the Defendant's practice and custom of denying and delaying
medical care to the TCCC patients. Plaintiff had waited over 4 months after suffering a
torn bicep and injured rotator cuff just to be referred to the correct medical professional
Dr. Joshi an orthopedic surgeon.

**22**     Around this time multiple TCCC patients were also waiting to see an orthopedic
surgeon as well as Plaintiff, this was due to Defendants MTC, Graves, McLane, and
Shelton not contracting for or allowing the failure to contract for, the appropriate medical
professionals, and or simply refusing to pay for medical care TCCC patients do receive in
the community. TCCO/TCCC failing to pay hospitals, dentists, or other medical service
providers is well-known to the surrounding communities. On 4-28-23, Broselow
specifically states that the reason for the delay in plaintiff's medical care was due to the

orthopedic surgeon not having a contract with MTC. *See* (**Ex. Pg. 32.** *Stating* "I have met with Dr. Joshi who is ready to see our patients but is only lacking the contract being signed"). Defendant's MTC, Graves, McLane, and Shelton knew or should have known that failing to contract for medical specialists, to meet the needs of TCCC patients, would result in continuing injury to those in need of medical care in violation of medical professional judgment, practice and standards of the medical field and amount to deliberate indifference TCCC Patients medical needs.

**23.**     By 4-28-23, it had been over 4 months since Plaintiff tore his bicep and right rotator cuff, Graves, McLane, Marsh, Shelton, and Searcy's have a well-known persistent custom of refusing to pay for, delaying, or simply denying TCCC patients access to the appropriate medical professionals to meet their medical, dental, and psychiatric care needs. This is well known to all the staff, and administration of the TCCO/TCCC. 4-months after his injury Plaintiff was scheduled to receive an MRI and see on orthopedic surgeon. MTC, Graves, McLane, and Shelton either knew or should have known that delaying adequate medical care based on failing to contract with proper medical professionals would result in injury to TCCC patients, and Baiza in violation of His constitutional rights.

**24.**     Over the next 4 months Plaintiff suffered pain, emotional distress, and difficulty performing full daily activities while his medical care was delayed. He submitted multiple sick calls complaining of the pain and requesting pain medication. (**Ex. Pgs. 7,** Sick calls dated 6-22-23, *stating* "I please need to see the provider about my pain in my bicep and shoulder I'm no longer taking the (Cymbalta 90mg) I was getting side effects from it. Please help thank you" *also see* **Ex. Pg. 8.,** sick call dated 7-20-23, "I please need to see the provider to get the 15mg on the pain meds I'm taking to see if I can get a stronger dosage. Thank you for your time. --> Meloxicam 15mg.") By this time Plaintiff's bicep was deformed, with a gap splitting the muscle in half in at the upper part of his bicep. He tried to exercise his arm but was unable to lift very much weight without feeling a snap and pain in his bicep.

**25.**     Plaintiff's medical care was delayed 9-months after he tore his bicep and rotator cuff while he suffered pain and emotional distress of not knowing if his arm will be deformed for the rest of his life. This delay was specifically due to Graves, McLane, Marsh, Shelton, and Searcy's failure to contract for adequate medical care for the TCCC patients. On 9-5-23, Plaintiff was seen by a Lubbock Orthopedic surgeon -Dr. Atul B. Joshi, MD- (**Ex. Pgs. 43-47.,** Joshi's Office notes of Plaintiff's appointment 9-5-23.). At the beginning of their appointment Dr. Joshi noticed Plaintiff's torn bicep, and said that he couldn't believe that Plaintiff had to wait 8 months to see him and he was shocked that he wasn't sent to the hospital as soon as he was injured. Joshi was sympathetic to Plaintiff because of his deformed bicep. Joshi told plaintiff multiple times that he should not have waited 8-months to see a surgeon. And appeared upset because Plaintiff had not had an MRI on his arm and right arm and shoulder.

**26.**     Dr. Joshi assessed that plaintiff had pain in shoulder and a bicep tendon rupture, **(Ex. Pg. 44,).** Joshi told Plaintiff that his injury very well may be irreparable due to the 8-months that had lapsed since his injury. Joshi told Plaintiff that he might have a chance in repairing his bicep and said that he wanted him to have an MRI to be sure, *see* **(Ex. Pg. 45,** Joshi's notes; *physical examination:* "is a massive bicep rupture proximal noted. […] Plain for MRI. Of the right shoulder. And the right arm to see exact status of other tendons as well as biceps quality. I do not think surgical treatment will be can be done after 8-months and the results may not be very good unfortunately, but I [sic] until the MRI is done we cannot proceed further.") Plaintiff has suffered extreme emotional distress and pain due to his injury, deformed bicep, and denial of medical care.

**27.**     Plaintiff waited another 2 months for an MRI to determine the extent of his injury. On 11-15-23, Plaintiff was transferred to the Lamb Healthcare Center, in Littlefield, TX, and received an MRI on his right shoulder, and upper arm. **(Ex. 59-64.,** MRI report from Lamb Health Center.) The MRI verifies Plaintiff's torn bicep and the extent of his injury. Dr. Philip B. McDonald described the extent of Plaintiff's permanent damage due to the denial and delay of adequate medical care. **(Ex. Pg. 60,** Radiology Report "Significantly attenuated biceps tendon in the bicipital groove with no healthy remnant in the intra-articular segment.") Graves, McLane, Marsh, Shelton, and Searcy's Practice of failing to provide adequate medical care, that resulted in the 8-month delay in seeing Dr. Joshi, and 10-month delay in receiving MRI, which caused Plaintiff unnecessary pain and suffering and an - irreparable injury of a torn bicep.

**28.**     Plaintiff was seen again by Dr. Joshi, on November 21, 2023, *see* **(Ex. Pgs. 48-52.** Joshi's office notes of Plaintiff's 11-21-13 appointment.). During the appointment Joshi's noted again that Plaintiff had a ruptured torn bicep and told Plaintiff that he was going to refer him to UMC for further treatment **(Ex. Pg. 49.** at, assessment and plan: "1. Bicep tendon repute, proximal, right initial encounter (primary)"). Joshi reviewed the MRI Plaintiff received on 11-15-23, and again expressed his shock that he was not provided medical care for almost a year that surgery may be too late. Plaintiff was adamant that he wanted surgery to repair his deformed bicep. Joshi referred him to UMC *see* **(Ex. Pg. 50.,** at subjective: "MRI is positive for but she is clinical diagnosis of rotator cuff no otherwise involving any other tendons. This is a chronic bicep tendon. Rupture I do not know required what kind of surgery may be graft I do not know his candidate for it or not I think it best thing him to refer it to UMC for further treatment, Treatment plan will make an appropriate arrangement for that.")

**29.**     Joshi again expressed his sympathy to Plaintiff for having to endure such a deformity and weakness in his right bicep. Plaintiff's bicep looks like there is two knots the size of an orange with a complete split in the middle, and he is unable to lift weitght with his right arm. Joshi again stated that the delay in receiving appropriate medical care has caused him to endure a possible lifelong injury. Joshi stated that he was sorry because

his bicep would have been repaired fairly easy, if he wouldn't have waited so long. Plaintiff is very distressd, and suffers pain, due to his deformed bicep, About 2-weeks after seeing Dr. Joshi, Plaintiff was seen TCCC Dr. Broselow, (**Ex. Pgs. 65-66).** Plaintiff stated to Broselow that Dr. Joshi had told him he was referring him to another orthopedic surgen with UMC (**Ex.pg. 65.).**  Plaintiff was then seen by Defendant Myra on 12-5-23, where she noted (**Ex. Pg. 67.** Myra notes "MRI right arm showed bicep tendon partial tear. Per Dr.  Joshi, surgery is not indicated (cosmetic deformity).") Platiniff was told that though Dr. Joshi referred him to UMC for his torn bicep he his referral would not be followed due lack of a contract. Plaintiff was very upset because they were not going to attempt to repair his bicep and he would continue to endure pain, and loss of adequate use of his arm.

**30.**     After seeing Myra, Plaintiff immediately placed a communication form (CF), to see Defendant Graves (**ex. Pg. 10,** CF dated 12-5-23, *stating* "I would like to have a face to face to meeting w/you A.S.A.P Concerning the overt differences in what the Ortho specialist and or N.M. have to say about repairing my damaged right torn biceps [sic]") Graves refused to meet with Plaintiff and simply returned the CF stating ("All I can go off of is specialist and Dr. notes. They are the providers and we will follow their recommendations" **Ex. Pg. 10).**  Defendant Nkule clearly failed to follow Dr. Joshi's referral to UMC. Plaintiff was very upset suffering pain and emotional distress, and fear that his bicep would be left week, unrepaired and deformed and the only reason is because the medical care was delayed due to Defendant's widespread, well-known custom and practice of failing to contract for appropriate medical professionals to meet TCCC patient's needs and over 11-month failure to provide the MRI to assess plaintiff's injury.

**31.**     On January 11, 2024 Plaintiff submitted an MTC Step 1. Grievance, *see* (**Ex. Pgs. 53-54.,** MTC Step 1., Griv. Received by MTC 1-16-24) Plaintiff restated MTC's failure to provide adequate medical care for his torn bicep, that occurred in December 2022. (**Ex. pg. 53.,** "On 9-5-23, I went to an appointment with orthopedic surgeon Dr. Atul Joshi, in Lubbock TX. Because I had a torn bicep and additionally hurt my shoulder in December 2022"). He described his multiple attempts to receive medical care placing multiple sick calls and communication form ("trying to get the medical help I needed." **Ex. Pg. 53.**) Plaintiff described MTC,'s reasoning for the denial ("MTC medical just kept telling me that due to the fact they didn't have a contract for services with any Orthopedic Specialist I was met with deliberate Indifference to my pain, suffering, and need of specialized care. Dr. Joshi told me plainly that I needed and should have had surgery at the time of my injury, but the 9 months of not being seen by a specialist, made my chances of a successful surgery and recovery slim, if possible at all." **Ex. pg. 53.**) Plaintiff requested that Dr. Joshi's referral to a sports medicine specialist be followed. (**Ex. Pg. 54).**  MTC responded to the Grievance stating "Mr. Baiza According to medical documentation by Dr. Joshi (Orthopedic Dr.) dated 11-21-2023, he states the following. "I do not feel

surgery is indicated per cosmetic deformity." Health Services will not approve cosmetic procedures.")

**32.**     Plaintiff submitted a subsequent MTC Step 2.. Grivance (**Ex. Pg. 55-56.** MTC step 2.,Gr. Received 2-2-2024**)** Plaintiff asserted MTC's failure to adddress the subject of his Step 1. Grivance, (**Ex. Pg,,55,**)  again he requested Dr. Joshi's referral to UMC be followed. Defendant MTC responded stating ("The dr. Indicated this surgery to be cosmetic in nature and our health services does not approve cosmtic surghery. Grivance denied." *Signed* by MTC- Wayne Schmoker) .

**33.**     Timothy Baiza has been and will continue to be irreparably injured by the conduct of the defendants unless this court grant the declaratory and injunctive relief which he seeks, and he has no plain, adequate or complete remedy at law to redress the wrongs described herein

## V. LEGAL CLAIMS

**34.**     Plaintiffs re alleges the facts stated in **paragraphs 10-33,** in the Complaint.

**35.     Claim 1**. As described in the complaint by pursuantly failing to provide an adequate medical department at the TCCC, falling to employee a sufficient number of medical staff *(Whom Though Very Adequate and Professional Existing Staff may be and are)* overworking, underfunding, and underpaying existing medical staff, failing to contract for appropriate professionals, resulting in the pertain widespread well-known custom of delaying or completely denying medical care to TCCC patients, wherein after being injured -**Baiza experienced delays** of:
      **6-days** to receive any medical attention at all,
      **3-weeks** to be seen by the provider,
      $2^{1/2}$ **– months** to be ordered an MRI,
      **4-months** to be referred to Dr. Joshi due to not contracting for adequate professionals,
      **8-months** to see Dr. Joshi soy due to no contract, and
      **10-months,** to receive an MRI,
      **and complete failure** to refer to UMC-provider per Dr. Joshi, (11-21-23 visit, **Ex. Pgs. 48-52)** causing extreme pain, suffering, emotional distress, irreparable injury of - deformed/week torn bicep,
      **Defendants MTC, Tiffany Graves, Marsha McLane, Farrah Shelton, and Michael Searcy, have Violated Plaintiff's Constitutional Right to Adequate Medical Care, by Subjecting Him to Inadequate Number of Medical Staff, Overworking, Underpaying and Underfunding Existing Med. Dpt./Staff, and Failing to Contract for Appropriate Specialists, professionals, of whose decision to do so was not based on Medical Professional Judgment Practice and Standards, also amounting to deliberate indifference to Baiza's Serious Medical Needs, In Violation of Baiza's of**

Fourteenth Amendment Substantive Due Process Rights Under the Constitution of the United States of America.

**36.     Claim 2.** As described in **paragraph 16**. herein, by upon first examining and observing Timothy Baiza's injured shoulder and torn-bicep on 1-4-23, acknowledging and documenting Baiza's injury was over 5 weeks old- and severe, and hearing Baiza's request to be sent to a hospital, but ignoring his request and simply provided him ibuprofen for pain, sending him away, **Defendant Nkule Departed From Accepted Medical Professional Judgment, Practice, and Standards enough to Demonstrate that Her Decision was not based on Professional Medical Judgement and Amounting to Deliberate Indifference to Baiza's Serious Medical Needs In Violation of Plaintiff's Fourteenth Amendment Substantive Due Process Right to Adequate Medical Care Under the Constitution of the United States of America.**

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Timothy Baiza respectfully prays that this court enter judgement:

**36.     1.** Granting Plaintiffs, a **DECLARATION:** that;

      **i.** The acts and omissions described herein violate Timothy Baiza's rights under the Constitution and Laws of the United States,

**37.     2.** Issuing a **PERMANENT INJUNCTION:** ordering the Defendants;

      **i.** To ensure the TCCC maintains a medical department, that is an adequately funded, compensated, and fully staffed with an adequate number of medical personal, to meet the needs of the TCCC patient population, giving consideration to the specific needs, including the contracting for appropriate professionals and specialists; **and**

**38.     ** Granting Timothy Baiza compensatory damages in the amount of **$250,000 dollars,** against **Defendants MTC, Tiffany Graves,  Marsha McLane, Farrah Shelton, and Michael Searcy** jointly and severally, as the relief demanded in the complaint for **Claim 1,** *supra* **and;**

**39.     ** Granting Timothy Baiza compensatory damages in the amount of **$150,000 dollars,** against **Defendant Nkule Myra,** as the relief demanded in the complaint for **Claim 2.**

## VERIFICATION

I Timothy Baiza Declare under the penalty of perjury that the forgoing is true and correct. Executed at Littlefield, TX 79339 on May 3, 2024.     RESPECTFULLY SUBMITTED

_____

**TIMOTHY BAIZA PRO-SE**

May 4, 2024



Office of the Clerk
U.S.D.C., N.D. Tex.
1205 Texas Ave. Rom 209
Lubbock, Texas 79401


Re: Original Filing of suit, Pro se, In Forma Pauperis,


Dear Clerk of the Court
      Hello, my name is Timothy Baiza, and I am filing this suit pro-se and *In forma Pauperis.*
I am sending 2 envelopes to the Court, and have numbered them on the envelope.

      **In envelope no. 1.** Is a 1- Civil Cover Sheet, 1-Application to proceed *IFP,* 2- copies of
the Original Complaint, 1-self addressed pre-stamped envelope, and 1-copy of the first page of th
e complaint marked F.M.C., File Marked Copy.
      **In envelope No. 2.**    I have sent the exhibits cited in the complaint. (67 pages.)


Please file this complaint and send me a file marked copy in the envelope provided


Thank You for your time.

Timothy Baiza
2600 S. Sunset Ave.,
Littlefield, TX.  79339

Timothy Boiza
Texas Civil Commitment Center
2600 S. Sunset Ave.
Littlefield TX 79339



RECEIVED
MAY - 8 2024
CLERK U S DISTRICT COURT
NORTHERN DISTRICT OF TEXAS



LEGAL Mail

Envelope No. 1. 5-4-24
U. S. D. C., N. D. Tex.
Office of the Clerk
1205 Texas Ave. Room 209
Lubbock, TX 79401

RECEIVED
MAY 6 2024
BY: